IN THE UNITED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Chadwick Walston, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>Super Ego Logistics LLC., )<br>And )<br>Aleksandar Mimic )<br>Individually )<br>Under FLSA, IMWL and IWPCA )<br>As an Employer )<br>)<br>)<br>)<br>Defendants. ) | CASE NO 24 CV 3263<br>District Judge:<br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED<br>ON ALL COUNTS** |

# COMPLAINT

NOW COMES the Plaintiff, Chadwick Walston, individually, by and through his undersigned counsel of record, upon personal knowledge as to those allegations in which he so possesses and upon information and belief as to all other matters, pursuant to §216(b) of the Fair Labor Standards Act (hereinafter "FLSA"), the Illinois Minimum Wage Law 820 ILCS 105/1 *et seq* (hereinafter "IMWL" ), and the Illinois Wage Payment and Collection Act (IWPCA) and brings this cause of action against Defendant Super Ego Logistics LLC., (Hereinafter referred to as "SEL" and/or "Defendant SEL"), and as well as Aleksandar Mimic, individually as an "Employer" under the FLSA, IMWL and IWPCA and in so doing states the following:

1

## **NATURE OF THE ACTION**

1. Plaintiff alleges that he, under both federal and state wage laws, was mis-classified as an "independent contractor" thus Defendants did not pay Plaintiff overtime wages due under the FLSA and/or IMWL and that he was also misclassified as salaried, as Plaintiff had little or no "Exempt" job duties and/or was not paid sufficient wages to qualify for an exempt classification.

2. Plaintiff summarizes his claims as follows:

    a. From September 2022 to June of 2023 Plaintiff was misclassified as an "independent contractor" by Defendants and should have been classified and paid as an employee.

    b. From September 2022 to June of 2023 Plaintiff was misclassified as a "salaried" employee, thus he should have been paid overtime wages, and he was not, thus Plaintiff is owed a substantial number of half-time hours and related penalties.

    c. On July 6, 2023 Plaintiff was forced to sign a new contract, or lose substantial earned wages and in that adhesion contract there was an arbitration clause that began on July 6, 2023, thus <u>Plaintiff is NOT presenting any claims after July 6, 2023</u>, rather the claims in this litigation are limited to from the date of Plaintiff's hiring by SEL until July 6, 2023.

    d. Plaintiff was not paid time and half for overtime work, rather was paid straight time for overtime work hours.

    e. Plaintiff and Defendants agreed to certain payments, such as set salary amounts, as well as certain benefits especially medical insurance benefits, paid sick leave and paid vacation leave.

   i. These agreements were IWPCA Agreements, which Defendants breached, by failing to pay those agreed-to wages and/or agreed-to benefits; especially Plaintiff's medical insurance benefits.

 f. Plaintiff and Defendant also agreed-to commissions, yet Defendants failed to pay promised/agreed-to and earned commissions.

 g. In the alternative, should Plaintiff be found to not be an employee, rather was properly classified as an Independent Contractor, Plaintiff pleads, *in the alternative*, that the above IWPCA Agreements were also contractual agreements that Defendants breached, thus Plaintiff also brings common law claims of breach of contract.

3. Plaintiff was a misclassified employee who worked for Defendants at its suburban Chicago Illinois location during the relevant time period September of 2022 until July 5 of 2023, and who was denied his clearly-established rights under applicable federal and state statutes.

4. As a result of the practices of Defendants described herein, Defendants failed to adequately compensate Plaintiff overtime wages as required by the FLSA and IMWL.

## **JURISDICTION AND VENUE**

5. Plaintiff seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

6. Plaintiff seeks compensation and other relief under the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq.* Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

7. This Complaint also alleges causes of action under the statutes of the State of Illinois, that arise out of the same set of operative facts as the federal causes of action herein

alleged; furthermore; these state causes of action would be expected to be tried with the federal claims in a single judicial proceeding.

8. This Court has supplemental jurisdiction over those additional claims pursuant to 28 U.S.C. § 1367(a).

9. The acts complained of herein were committed and had their principal effect, as described more fully below, within this District Court; therefore, venue is proper within this District pursuant to 28 U.S.C. § 1391.

10. For IWPCA jurisdiction Plaintiff cites and relies on Admin. Code tit. 56, § 300.440, which applies requirements of the IWPCA to work done in Illinois, regardless of location of the employee. Here Plaintiff worked in Illinois via his remote work from Indiana.

## JURISDICTION IS ESTABLISHED VIA ENGAGEMENT IN COMMERCE BY DEFENDANTS
## DEFENDANTS ARE ENTERPRISES THAT REGULARLY AND RECURRENTLY HAVE AT LEAST TWO EMPLOYEES ENGAGED IN COMMERCE

11. Defendant is an enterprise that regularly and recurrently have at least two employees engaged in commerce.

12. Defendant Super Ego has sales well in excess of $500,000 per year for all years at issue.

13. Defendants engage in commerce via receiving payments via banking transactions that are transacted/transmitted to other states, via use of materials from other states and communications with customers from other states.

14. Plaintiff also pleads individual FLSA Jurisdiction for each and all of the Defendants as he arranged and sold transportation of materials from one state to another directly for Defendants.

## JURISDICTION BASED ON GROSS SALES
## DEFENDANTS GROSS SALES EXCEED $500,000

15. Defendant corporation operates a trucking/shipping business in Elmhurst Illinois.

16. Defendant sales exceed $500,000.00 each year for the last three years and for all years since 2001.

17. Defendant SEL sales exceed $500,000 as shown by the following: Defendant which describes itself as follows:

Super Ego Holding is a Chicago-based trucking company with over 4000 trucks that has accomplished a lot in the past several years. Our company's values include mutual trust and communication. Our top priorities are to provide our drivers with flexible dispatch, giving them the freedom to choose their loads and the areas they want to cover. Our goal is to have satisfied, loyal clients, and that's why we combine our knowledge and experience with plenty of benefits including flexibility in hometime - we understand that the family comes first. We are one big family, after all! If you are a CDL holder who would like to become an owner-operator, whether you wish to drive solo or as a team, you can apply here, and one of our experienced recruiters will call you soon to explain our offer in detail.

18. Thus Defendant having over 4000 trucks in its fleet shows that Defendant has sales of over $500,000 per year.

**PARTIES**
**A. Plaintiff**

19. Chadwick Walston is a resident of Indiana however Plaintiff worked as an employee and or "Independent Contractor" for Defendants' at their place of business, via remote access into the State of Illinois, within the area of this Division

5

of this District Court; though Plaintiff was misclassified and should have been classified as an Employee.

20. Plaintiff worked for the Defendant as a Freight Broker selling "loads" or space on trucks to third parties seeking to ship goods from one state to another.

21. Plaintiff was classified by the Defendants as an "Independent Contractor" from September 2022, and he worked in this capacity until on or around July 20, 2023.

22. During this period of time, Plaintiff was intentionally and improperly classified by Defendants as an independent contractor, but in reality he was an employee of Defendants subject to the requirements of the Fair Labor Standards Act, the Illinois Minimum Wage Act and Illinois Wage Payment and Collection Act.

23. As a result of Defendants intentional misclassification of Plaintiff, he was not paid overtime wages at an overtime rate of pay for work hours over forty.

24. Plaintiff was paid a salary, and thus not paid half time for overtime hours.

25. However, Plaintiff was also misclassified by Defendants as Exempt or salaried, when Plaintiff should have been paid hourly as Inside Salespersons are required to be paid.

## INDIVIDUAL DEFENDANT

26. Aleksandar Mimic is named individually as an "Employers" under the FLSA, IMWL and IWPCA.

27. Aleksandar Mimic managed and controlled the operation of the Defendant business and dictated the employment policies of the Defendant SEL including but not limited to the decision to classify the Plaintiff as an "independent contractor" and to pay Plaintiff no overtime wages.

28. Individual Defendant made the decisions to classify Plaintiff as an "independent contractor", or keep or enforce the classification of the Plaintiff as "independent contractor" and/or to reduce Plaintiff's salary and/or not pay Plaintiff's Agreed-To benefits.

29. As owner and manager of SEL, Aleksandar Mimic had the power to hire, fire and discipline employees and used that power to handle in many of the hiring, firing and disciplines of employees including the Plaintiff.

30. As owner and manager of SEL, Aleksandar Mimic caused the wage violations by writing or approving the Defendant's policy and procedures which included blatant wage violations including a policy to not pay overtime misclassification of Plaintiff and/or reduction of Plaintiff's salary and/or to paying Agreed-to benefits to Plaintiff.

31. Defendant Aleksandar Mimic had/have day to day control of operations of SEL and Plaintiff's work.

32. Defendant Aleksandar Mimic also oversaw the payment (and shortage) of wages to the employees including Plaintiff via handling or overseeing the payroll.

33. Defendant Aleksandar Mimic was aware that each time Plaintiff worked over 40 hours and that Plaintiff was not paid overtime.

**FACTUAL ALLEGATIONS WEEK BY WEEK**

34. Plaintiff worked overtime nearly every week of his work time with Defendants.

35. Plaintiff typically worked 50-60 hours per week most weeks while working for Defendants.

36. As some District Judges require a specific pleading of a specific overtime claim, Plaintiff pleads the following:

37. Defendant agreed to pay Plaintiff a yearly salary of fifty-thousand dollars ($50,000.00) (equivalent to, roughly, $961.54 per week), plus twenty-five percent (25%) commission (the "Contract").

38. However, Defendant breached the Contract by continually failing to pay Plaintiff all wages owed to Plaintiff, including the twenty-five percent (25%) commission.

39. Specifically, one of the commission shortages was that Defendants stopped paying the 25% commissions on "loads" sold on Defendants own trucks, which was not consistent with the parties IWPCA agreement.

40. Additionally, Defendant further breached the Contract in or around June 2023, when Defendant informed Plaintiff that it could no longer compensate him based on his salary of fifty-thousand dollars ($50,000.00) per year.

41. Instead, Defendant began compensating Plaintiff at a rate of only four-hundred dollars ($400.00) per week.

42. In failing to compensate Plaintiff pursuant to the agreed-upon salary of fifty-thousand dollars ($50,000.00) per year and twenty-fiver percent (25%) commission, Defendant failed to pay Plaintiff all wages earned by him, in violation of the Wage Act.

43. Around this time, Defendant also falsely informed Plaintiff that Defendant had previously overpaid him, despite the fact that Defendant had, in fact, not previously overpaid Plaintiff.

44. In fact, Defendant owed Plaintiff for continually underpaying him.

45. Plaintiff informed Defendant that Defendant actually owed Plaintiff for continually underpaying him and requested to be compensated for the wages that he was owed.

46. Another specific overtime week was Thanksgiving week of 2023, (11/20/23-11/26/23) where Plaintiff worked 55 hours in just 4 days. This added work hours was based on Plaintiff not working on Thursday, but the other days that week were very busy where Plaintiff worked 12-15 hours per day to try and cover the loads for the week.

47. Thus for the Thanksgiving week 2023 Plaintiff worked approximately 55 hours, or 15 hours of overtime for which he was paid no overtime wages.

### FACTS SUPPORTING A FINDING OF MISCLASSIFICATION
### MISCLASSIFICATION PURSUANT TO THE FLSA AND IMWL

48. Plaintiff had little control over the work environment.

49. Defendants set the rules and had complete control over the work venue, and Plaintiff had to obey Defendants rules or risk everything, including loss of his job. This is the very hallmark of the economic dependence and control of an employer-employee relationship.

50. Despite being on notice of its violations, Defendants chose to continue to misclassify Plaintiff and withhold wages to them in effort to enhance their profits and continue to misclassify the current work force of SEL today.

51. Defendants knew that persons such as Plaintiff was an employee that should be paid under the law, and has simply chosen not to pay him properly.

52. Evaluation of proper classification is a multiple part test, which the Defendants have not properly applied to Plaintiffs in determination of their status, rather Defendants simply assumed incorrectly that the Plaintiffs and other employees were independent contractors, simply because the Defendants declared them to be.

53. The test for Employee/contractor is found in a US DOL Fact Sheet #13: Am I an Employee?: Employment Relationship Under the Fair Labor Standards Act (FLSA) (revised May 2014).

54. The elements of this test demonstrate that Plaintiff and the class are not properly classified. The elements are as follows:

1) the extent to which the work performed is an integral part of the employer's business.

2) Whether the worker's managerial skills affect his or her opportunity for profit and loss.

3) The relative investments in facilities and equipment by the worker and the employer

4) The worker's skill and initiative.

5) The permanency of the worker's relationship with the employer.

6) The nature and degree of control by the employer

55. Almost none of these factors are in Defendants' favor as alleged as follows:

1) the extent to which the work performed is an integral part of the employer's business.

The work of the Plaintiff was/is integral part of the employers' business. Defendants business is shipping And/or trucking to other businesses and the Plaintiff work is solely related to that business: the Plaintiff sold "loads" for SEL.

2) Whether the worker's managerial skills affect his or her opportunity for profit and loss.

For the Plaintiff there was no opportunity for loss, the Plaintiff were paid the same baseline pay. While Plaintiff might have been able to earn commissions or bonuses, they did not have the opportunity to have a loss, thus showing he was not an independent contractor.

3) The relative investments in facilities and equipment by the worker and the employer

> Here Plaintiff made no investment other than his time and efforts and a few incidental items such as computers, phones and other communication devices, while Defendants has made large investments including leasing land and buildings, purchasing equipment, and paying contractors/employees.

4) The worker's skill and initiative.

   a. Here the Plaintiff's "skills" was simple sales of "loads", no specialized skill or initiative was required.

5) The permanency of the worker's relationship with the employer.

   a. Plaintiff worked for Defendant for nearly a year; September 2022 to July 2023.

6) The nature and degree of control by the employer

   a. Here Defendants have excreted strong and consistent control of Plaintiff, including: requiring particular hours of work and scheduling hours of work. Plaintiff also was assigned particular tasks on a daily basis and had to report the work done for review by his employers. Examples of control include that other Independent Contractors were fired for not maintaining Defendant demanded schedules.

**FIRST CLAIM FOR RELIEF**
**(Individual Claims for Violation of FLSA**
**Against all Defendants**

56. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint above, as if fully set forth herein.

57. Defendants violated the FLSA as follows:

11

    a. Plaintiff was misclassified as an "independent contractor" by Defendants,

    b. Plaintiff was misclassified as "salaried" based on:

        i. Plaintiff having few or no "Exempt" work duties

        ii. Plaintiff being paid less than the mandated amount to maintain a claim of exemption ie: paying a mere $400.00 per week rather than the minimum salary of $455.00.

    c. Plaintiff was not paid time and half for overtime work as described in detail elsewhere in this complaint.

58. Defendants' conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary and in bad faith.

59. By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiffs for monetary damages, liquidated damages and costs, including reasonable attorney's fees provided by the FLSA for all violations.

60. Plaintiff names the individual Defendant as alleged elsewhere in this complaint, incorporated herein.

## SECOND CLAIM FOR RELIEF

### (Individual Claims for Violation of IMWL)

**Against all Defendants**

61. Plaintiff repeats and re-alleges all the preceding paragraphs of the Complaint above, as if fully set forth herein.

62. Defendants violated the IMWL as follows:
    a. Plaintiff was misclassified as an "independent contractor" by Defendants,
    b. Plaintiff was misclassified as "salaried".
    c. Plaintiff was not paid time and half for overtime work

63. Defendants' conduct and practice, as described above, are and/or were willful, intentional, unreasonable, arbitrary and in bad faith.

64. By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiffs for monetary damages, liquidated damages, prejudgment interest, civil penalties and costs, including reasonable attorney's fees provided by the IMWL.

65. Plaintiff names the individual Defendant as alleged elsewhere in this complaint, incorporated herein.

### THIRD CLAIM FOR RELIEF
### (Claims for Violation of IWPCA)
### Against all Defendants

66. Plaintiff repeats and re-alleges all the preceding paragraphs of the Complaint above, as if fully set forth herein.

67. The foregoing actions of Defendant constitute violations of the Illinois Wage Payment and Collections Act (Wage Act).

68. This count arises from Defendant's violation of the Wage Act, 820 ILCS 115, which provides, in part, that "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned." 820 ILCS 115/4.

69. Defendant permitted, encouraged, and/or required Plaintiff to work hours for which Plaintiff was not properly compensated, pursuant to the compensation structure that was agreed upon between Plaintiff and Defendant.

70. Defendant violated the Wage Act, 820 Ill. Comp. Stat. 115/1 *et seq.*, by failing to properly pay Plaintiff for all time worked.

13

71. Plaintiff seek all unpaid wages, as well as all relief this Court deems just.

72. Defendant's actions were willful and not in good faith.

### FOURTH CLAIM FOR RELIEF
### (Claims for Breach of Contract)

73. Plaintiff repeats and re-alleges all the preceding paragraphs of the Complaint above, as if fully set forth herein

74. Defendant failed to compensate Plaintiff in accordance with the parties Contract.

75. Defendant's failure to compensate Plaintiff in accordance with written contract between Plaintiff and Defendant, including unpaid commissions and unpaid benefits, constitutes Defendants' breaches of contract.

76. As a result of Defendant's breach, Plaintiff suffered damages that were foreseeable at the time that the parties entered into the Agreement, including but not limited to lost wages and benefits that Plaintiff would have earned under the Agreement

### PRAYER FOR RELIEF FOR ALL CLAIMS

WHEREFORE, Plaintiff respectfully prays that each Defendant be summoned to appear and answer herein; for orders as follows:

(A) For an order of this Honorable Court entering judgment in Plaintiff's favor against each Defendant, jointly and severally;

(B) That the Court award Plaintiff his actual economic damages in an amount to be determined at trial, but in any event an amount not less than that which would compensate them for unpaid back wages;

(C) A declaratory judgment that Defendant's practices alleged herein violate the Fair Labor Standards Act, 29 U.S.C. §201, et sea., and attendant regulations at

(D) A declaratory judgment that Defendant's practices alleged herein violate the Illinois Minimum Wage Act and/or the Illinois Wage Payment and Collection Act

(E) Judgment for damages for all unpaid regular wages and overtime compensation under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.,* and attendant regulations at 29 C.F.R. §516 <u>et sea</u>.:

(F) Judgment for damages for all unpaid regular wages and overtime compensation under the Illinois Minimum Wage Law, and attendant regulations;

(G) Judgment for liquidated damages pursuant to the Fair Labor Standards Act, 29 US.C. §201, *et seq* in an amount equal to all unpaid regular wages and overtime compensation owed to Plaintiffs and members of the Classes during the applicable statutory period;

(H) Judgment for treble and 5% monthly penalties pursuant to the Illinois Minimum Wage Law,. and attendant regulations;

(I) Judgment for treble and 5% monthly penalties pursuant to the Illinois Minimum Wage Law,. and attendant regulations;

(J) Judgment for any and all civil penalties to which Plaintiffs' may be entitled;

(K) An order directing Defendant to pay Plaintiff prejudgment interest, reasonable attorney's fees and all costs connected with this action; and

(L) damages for Defendant's breach of contract,

(M) Such other and further relief as this Court may deem necessary, just and proper.

**JURY TRIAL DEMANDED**

**Respectfully Submitted by  /S/John C. Ireland**
**The Law Office of John C. Ireland**
**636 Spruce Street South Elgin ILL 60177    630-464-9675**
**Fax 630-206-0889        Attorneyireland@gmail.com Dated: April 23, 2024**